**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1773

ANDREW KLOPMAN,

Plaintiff - Appellant,

and

GAYLE KLOPMAN,

Plaintiff,

versus

ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Williams D. Quarles, Jr., District Judge. (CA-04-2529-WDQ)

Argued: February 1, 2007                    Decided: May 9, 2007

Before MOTZ, GREGORY, and SHEDD, Circuit Judges.

Affirmed by unpublished opinion. Judge Gregory wrote the opinion, in which Judge Motz and Judge Shedd joined.

**ARGUED:** Daniel P. Doty, SCHULMAN & KAUFMAN, L.L.C., Baltimore, Maryland, for Appellant. Linda S. Woolf, GOODELL, DEVRIES, LEECH & DANN, L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** Howard J. Schulman, SCHULMAN & KAUFMAN, L.L.C., Baltimore,

Maryland, for Appellant.  Joseph B. Wolf, GOODELL, DEVRIES, LEECH & DANN, L.L.P., Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

The question before the Court is whether Andrew Klopman has proven by "clear and positive" evidence that he had an insurance policy with Zurich American Insurance Company of Illinois ("ZAICI") covering one of his rental properties. Finding that Klopman has not met his burden of proof, we affirm the decision below granting summary judgment to the insurance company.

I.

In October 2003, a former tenant sued Klopman in Maryland state court for personal injuries arising from exposure to lead paint at 3719 Towanda Avenue ("the property"), a rental property Klopman owned from April 1983 until May 1984. Believing that ZAICI had insured the property under a $300,000 policy, Klopman asked the company to defend and indemnify him in the lawsuit. ZAICI refused, claiming that it had not insured the property.

In June 2004, Klopman initiated this action for a declaratory judgment that ZAICI is obligated to defend and indemnify him in the lead paint lawsuit. ZAICI removed the action to federal court, where the district judge granted summary judgment in ZAICI's favor because, the judge found, Klopman could not prove the existence of an insurance policy by "clear and positive" evidence, as required under Maryland law.

Klopman does not have the original policy or a duplicate because, he contends, a basement flood destroyed his business records in 1992. Nonetheless, he maintains that his insurance agent, Barton Keiser of Keiser & Keiser, obtained the insurance in keeping with Klopman and Keiser's routine practice of securing insurance for the many investment properties Klopman owned.

Klopman and Keiser do not recollect whether Keiser ever notified or was told by Klopman to notify an insurance carrier of Klopman's purchase of 3719 Towanda Avenue, whether they ever saw an insurance policy listing the property as an insured property, or whether Keiser ever provided Klopman with proof of insurance. Rather, Klopman primarily bases his assertion that the property was insured on a copy of a declarations page. A declarations page is usually the first page of an insurance policy, exclusive of the cover, and it contains limited information about the policy. Klopman received the copy of the declarations page he has submitted into evidence from an attorney he retained in 2001 for another lead paint suit. The attorney received the document from an investigator she hired because all of Klopman's business records were destroyed. The investigator, in turn, received the document from an insurance broker with whom Klopman worked in the mid-1980s. The declarations page indicates that it belongs to a ZAICI policy, numbered Special Multi-Peril ("SMP") 70 87 816, that was issued through George F. Brown & Sons, a surplus lines broker and

authorized agent of ZAICI.[1]  The declarations page contains Klopman's name and address and indicates that the policy's coverage period is May 27, 1982 to May 27, 1983 and its premium is $2,505.99, including $72.99 for a state surplus lines tax.  3719 Towanda Avenue is not one of the three properties listed on the declarations page (nor are several of the approximately nine other properties Klopman owned that year).  The declarations page does, however, indicate that the policy incorporated by reference a form L6415 or L6416.  An L6415 or L6416 typically lists the additional properties, if any, covered by a policy.  Klopman does not have this or any other form.

ZAICI's extensive search for the alleged policy and a copy of the declarations page was unsuccessful.  ZAICI acknowledges that if the policy in fact existed, it would have been destroyed by now pursuant to the company's policy of destroying files after ten years.

II.

We review the district court's summary judgment ruling de novo, viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that

---

[1]Surplus lines insurance is a type of insurance available when, due to the nature and severity of the risk, an insured cannot obtain coverage from insurers authorized to do business in the state of Maryland.  See Md. Code Ann., Ins. § 3-301 (2005).

party's favor.  See Varghese v. Honeywell Int'l, Inc., 424 F.3d 411, 416 (4th Cir. 2005).  Summary judgment is justified if the pleadings, depositions, answers to interrogatories, and affidavits demonstrate that there is no genuine factual issue for trial and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  "[J]udgment as a matter of law is proper only if 'there can be but one reasonable conclusion as to the verdict.'"  Varghese, 424 F.3d at 411 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

The proponent of an original writing——here, Klopman——typically must produce the writing to prove its contents.  Fed. R. Evid. 1002.  But if the original is lost or destroyed in good faith, other evidence of the writing's content is admissible.  Fed. R. Evid. 1004(1).  As with all other issues of fact, the trier of fact determines whether the asserted original ever existed and whether the other evidence accurately reflects the original's contents. Fed. R. Evid. 1008.

Because the instant case is a diversity dispute between alleged parties to an insurance contract, Maryland law governs as to the burden of proof Klopman must meet.  In Maryland, the proponent of a lost insurance policy "must establish the fact of loss and the terms and conditions of the policies by 'clear and positive' evidence."  In re Wallace & Gale Co., 275 B.R. 223, 230 (D. Md. 2002), vacated in part on other grounds, 284 B.R. 557 (D.

-6-

Md. 2002), aff'd, 385 F.3d 820 (4th Cir. 2004); see also Barranco v. Kostens, 54 A.2d 326, 328 (Md. 1947) ("The evidence necessary to establish a lost instrument and to prove its contents must be clear and positive and of such a character as to leave no reasonable doubt as to its terms and conditions.").

Maryland courts have not yet clarified whether the "clear and positive" standard approximates the "mere preponderance" standard or the "clear and convincing" standard. Accordingly, federal courts in Maryland have sometimes chosen one standard and sometimes chosen the other. Compare Lowry's Reports, Inc. v. Legg Mason, Inc., 271 F. Supp. 2d 737, 757 n.3 (D. Md. 2003) (assuming that the standard requires clear and convincing evidence), with Klopman v. Zurich Am. Ins. Co., No. Civ. WDQ-04-2529, 2005 WL 1367080, at *2 n.5 (D. Md. June 7, 2005) (assuming that the standard requires "substantially more than a preponderance"); see also Wallace, 275 B.R. at 230 n.6 (contrasting the standards chosen by various courts). Rather than decide the standard's meaning, we proceed merely with the understanding that Klopman's evidence must at least "leave no reasonable doubt" as to the existence and the terms and conditions of the insurance policy he insists ZAICI issued to him. See Barranco, 54 A.2d at 328. Having done so, we find that there is reasonable doubt if not as to the existence of policy #SMP 70 87 816, at least as to the terms and conditions of the policy.

III.

We first consider Klopman's evidence regarding the existence of a policy issued to him by ZAICI. Klopman primarily relies on the copy of the declarations page associated with policy #SMP 70 87 816.[2] In addition, Klopman has shown that ZAICI revised a record retention policy governing SMP policies, specifically, by June of 1984. From this, we may infer that, despite its protests to the contrary, ZAICI indeed issued SMP policies in 1983 such as policy #SMP 70 87 816.[3] The copy of the declarations page, which bears ZAICI's name as the insurer and Klopman's name as the insured, plus the inference that ZAICI issued SMP policies is circumstantial evidence that ZAICI issued an SMP policy to Klopman.

Klopman supplied additional evidence from his business ledgers, copies of which show that he wrote two checks in 1982 to Keiser & Keiser totaling the exact amount of the premium listed on the declarations page. These ledgers plus the declarations page

---

[2]We overlook the admissibility problems plaguing the copy of the declarations page because Klopman's claim fails whether or not we deem the page admissible. In brief, those problems are that (1) the copy of the page barely qualifies as a duplicate because it is partially illegible and contains handwritten notes, (2) Klopman has not offered evidence sufficient to authenticate the page, and (3) the page constitutes hearsay. See Fed. R. Evid. 901(a), 801, 1001(4), 1003.

[3]In ruling otherwise, the district court failed to take the evidence in the light most favorable to Klopman. Instead, the court credited the testimony of a ZAICI underwriter that, from 1978 to 1983, ZAICI issued stand-alone "Owner's, Landlord's and Tenant's" policies, not package policies like the SMP policy identified on the declarations page.

are circumstantial evidence that Klopman paid for policy #SMP 70 87 816 and therefore the policy existed.  We note that ZAICI's inability to find the policy is not evidence, as ZAICI argues, that the policy never existed.  ZAICI acknowledges that if policy #SMP 70 87 816 in fact existed, ZAICI would have destroyed the policy information pursuant to its record retention policy.

Klopman's final evidence as to the existence of a policy is that ZAICI defended and paid a claim under policy #SMP 70 87 816 in 1986.  That year, Klopman settled a lawsuit by a former tenant, Theresa St. Pierre, for injuries sustained in a September 12, 1982 slip and fall at 2828 Frederick Avenue, another rental property Klopman owned.  The settlement documents reflect that ZAICI, on behalf of Klopman, paid St. Pierre $6,575 in exchange for St. Pierre's agreement to release ZAICI and Klopman from all claims and demands.  ZAICI's own records confirm these details.  A printout titled "Claim Summary Information" from ZAICI's database of computerized claims information identifies the policy number (70 87 816), a claim number, a claimant named Theresa Arsenault,[4] an accident date of September 12, 1982, a brief description of the claim (slip and fall), the amount paid to indemnify the claim ($6,575), a supervisor's name, a date for the last activity on the file, and the status of the claim (closed).  Although Klopman's

---

[4]We may presume that Theresa St. Pierre was known by two surnames because even Klopman's documents from the lawsuit refer to "Theresa St. Pierre" and "Theresa Arsenault."

name does not appear on ZAICI's printout, the printout and Klopman's settlement documents together are circumstantial evidence that Klopman had a policy numbered SMP 70 87 816 and issued by ZAICI.[5]

In sum, viewing the evidence in the light most favorable to Klopman, we find that he has produced sufficiently clear evidence for a reasonable fact-finder to conclude that ZAICI issued policy #SMP 70 87 816 to him.

IV.

Notwithstanding this initial showing, Klopman has not produced similarly clear evidence as to the terms and conditions of policy #SMP 70 87 816. Klopman argues, for example, that he has proved the policy's contents by placing into the record examples of the form L6415 or L6416 noted on the declarations page. Such forms typically list the additional properties covered by a policy and specifically state that the policy covers those additional properties. The sample forms in the record, however, are not associated with policy #SMP 70 87 816, the policy Klopman alleges

---

[5]A ZAICI claims specialist testified that ZAICI's decision to pay a claim does not mean that a policy existed. According to the claims specialist, ZAICI paid claims in three circumstances: (1) when a policy existed; (2) by mistake; or (3) when paying a claim was cheaper than determining whether a policy existed. Construing the evidence in the light most favorable to Klopman and drawing all justifiable inferences in his favor means presuming that ZAICI paid the St. Pierre claim associated with policy #SMP 70 87 816 because the policy in fact existed.

ZAICI issued him.[6]  More importantly, the forms are not clear

evidence of the terms and conditions of policy #SMP 70 87 816: the

forms unambiguously state that they are to be attached "to [the]

Policy . . . to complete said policy."  J.A. 58, 60.  Thus, even if

the forms were the very forms associated with Klopman's policy,

they would establish only the policy's additional terms, not its

original or core terms.  For this reason, it is immaterial that, as

Klopman emphasizes, a ZAICI underwriter testified that the sample

forms contained language that ZAICI would have used.  The forms'

language is insufficient to meet Klopman's burden.

To prove the policy's contents further, Klopman highlights the

testimony by a ZAICI underwriter that, from 1978 to 1983, ZAICI

used standard policy forms pre-printed by the Insurance Services

Office.  The record, however, contains none of these standard

policy forms.  Nor does the record contain an example of any policy

ZAICI issued the year Klopman purchased and allegedly insured 3719

Towanda Avenue.  Examples of standard policy forms or

contemporaneous policies issued by ZAICI would provide evidence of

the terms of Klopman's lost policy.[7]

---

[6]In fact, one of the forms has an expiration date indicating
that it expired three years before Klopman insists ZAICI issued him
a similar form.  The other form bears no date at all.

[7]For this reason, we note that Klopman's reliance on Lowry's
Reports, Inc. v. Legg Mason, Inc., 271 F. Supp. 2d 737 (D. Md.
2003), is misplaced.  In Lowry's Reports, a magazine publisher
sought to prove the existence of a lost magazine subscription
agreement.  To meet its burden, the publisher (1) testified that it

Klopman also seeks to prove the policy's contents by way of an affidavit from Keiser swearing to knowledge Keiser gained from over thirty years as an insurance agent and broker. Keiser states in relevant part:

> Based on my personal experience and knowledge . . . it was standard industry practice in 1982 and 1983 for policies of insurance with liability coverage without exception to contain language that stated, in effect, that the insurance company would pay in behalf of the insured all sums which the insured became legally obligated to pay as damages because of bodily injury and property damage to the extent of the insurance caused by an occurrence and also pay for the cost of defense of any law suit.
>
> . . .
>
> Based on my own standard and routine business practices and those of Keiser & Keiser, as well as my years of personal experience as an insurance broker . . . I am able to state the following. Policy #SMP 70 87 816 contained language which stated that the insurance company would pay, on behalf of the insured, all sums which the insured became legally obligated to pay as damages because of bodily injury and property damages to the extent of the insurance caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and that the company had the duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage.

---

required every subscriber to execute an identical subscription agreement, (2) "offer[ed] several contemporaneous subscription agreements, executed by others, as evidence of the terms of the 'lost' . . . agreement," and (3) presented evidence of the defendant's annual payment to the magazine and the defendant's name and address on the magazine delivered. Id. at 757. Although, like the publisher, Klopman testified that he added every new rental property he purchased to the same ZAICI policy, he has not taken the additional (and necessary) step of offering contemporaneous policies to establish the terms of his lost policy.

J.A. 588-89. Keiser's statement, however, is not evidence that leaves no reasonable doubt as to the terms and conditions of policy #SMP 70 87 816. His supposition as to the policy's contents omits, for example, any exceptions or unique terms policy #SMP 70 87 816 might have contained. No court tasked with issuing a declaratory judgment as to insurance coverage, as sought here, could consult this bare testimony to determine the limits of ZAICI's duty to defend Klopman or the amount ZAICI might be legally obligated to pay for damages related to 3719 Towanda Avenue.

Klopman's final, unsuccessful attempt to prove the contents of policy #SMP 70 87 816 relates to the policy's limits. From an answer to an interrogatory in the St. Pierre case, Klopman seeks to prove that the policy provided liability coverage with limits of $300,000. In the St. Pierre case, St. Pierre's lawyers asked Klopman to "[s]tate the limits of liability of insurance covering falls on the said . . . property [2828 Frederick Avenue] and attach a copy of your insurance policy to your Answer." J.A. 103. Klopman answered: "Limits on OLT [Owner's, Landlord's, and Tenant's] Insurance Policy are $300,000.00." Id. Because both the instant case and the St. Pierre case involved policy #SMP 70 87 816, and because the ZAICI underwriter testified that limits of liability of $300,000 were not unusual in ZAICI policies between 1978 and 1983, Klopman argues that the answer to the interrogatory

-13-

in the St. Pierre case establishes the policy limit in the instant case.

Klopman's argument fails. The interrogatory response Klopman cites concerned his property at 2828 Frederick Avenue, not 3719 Towanda Avenue. We cannot be certain, then, that the limits applicable to St. Pierre's 1982 slip and fall at 2828 Frederick Avenue—months before Klopman purchased 3719 Towanda Avenue—are the same limits applicable to another tenant's 1983 lead paint injuries at 3719 Towanda Avenue. Moreover, none of Klopman's interrogatory responses in the St. Pierre case identified the number, issuing insurer, or effective dates of the policy referred to in the specific response Klopman cites, much less specific language in the policy. The interrogatory asked Klopman to produce the policy he relied on, but he did not. Consequently, Klopman's documents from the St. Pierre case shed little light on the terms and conditions of policy #SMP 70 87 816, especially as those terms relate to 3719 Towanda Avenue.

We do not allow a litigant faced with a motion for summary judgement to "create a genuine issue of material fact through . . . the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Aside from evidence that ZAICI's limit of liability for an unrelated claim arising from an unrelated injury on a different property during a different year was $300,000, Klopman has not produced a single term or condition

related to policy #SMP 70 87 816.  In the absence of proof as to the terms and conditions of the policy, we do not reach the question of whether Klopman has proven by clear and positive evidence that the policy actually covered 3719 Towanda Avenue.

V.

Although the case at bar is an action for declaratory judgment, in considering whether summary judgment was properly granted, the critical question remains "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson, 477 U.S. at 252.  Because Klopman has failed to present evidence "of such a character as to leave no reasonable doubt" as to the terms and conditions of policy #SMP 70 87 816, we cannot answer the question in the affirmative.  Barranco, 54 A.2d at 328.  The decision below is affirmed.

AFFIRMED